IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 18, 2006 Session

## STATE OF TENNESSEE V. RONALD EUGENE MULLINS

**Direct Appeal from the Criminal Court of Bedford County**
**No. 15802   Franklin Lee Russell, Judge**

_____

_____**No. M2003-02928-CCA-R3-CD - Filed October 12, 2006**

_____

The appellant, Ronald Eugene Mullins, was convicted by a jury of theft of property over one thousand dollars. The trial court ordered the appellant to serve a three-year sentence as a Range I standard offender. After the denial of a motion for new trial, the appellant filed a timely notice of appeal challenging the sufficiency of the evidence. After a review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.S. DANIEL, SR. J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Andrew Jackson Dearing, Shelbyville, Tennessee, Attorney for the Appellant, Ronald Eugene Mullins.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; W. Michael McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

### FACTS

The appellant was indicted by the Bedford County Grand Jury on May 16, 2005, for theft of property over ten thousand dollars. The indictment alleged that the appellant did "knowingly . . . obtain or exercise control over" scrap metal belonging to Clarence Ewing with the intent to deprive Mr. Ewing of the property. The case proceeded to trial on August 1, 2005.

At trial, Mr. Ewing testified that he and his family owned approximately seventy-five acres of land on Pickle Road in Bedford County. For approximately fourteen years, Mr. Ewing collected scrap metal and stored the metal, car parts and farming tools on the property. Mr. Ewing estimated

that the scrap metal covered approximately four acres of the property and was located approximately one-half of a mile from Pickle Road.

On Sunday, November 14, 2004, Mr. Ewing was on his way to church when he saw his own truck being towed down the road. The last time Mr. Ewing saw the truck it was parked on Pickle Road where it was used to haul scrap metal. Mr. Ewing followed the truck until the person that was towing it stopped on the side of the road. Ewing approached the person, later identified as the appellant, and asked where they were taking the truck. The appellant informed Mr. Ewing that the truck was being taken to PSC Metals.

At that time, Mr. Ewing decided to contact Bobby Peacock, a police officer. Mr. Ewing and Officer Peacock went to PSC Metals. When they arrived, they could see the truck sitting on the scales behind the closed gates. An employee of PSC Metals allowed Mr. Ewing to inspect the truck. Inside the cab of the truck, Mr. Ewing located a piece of paper showing that he paid the insurance policy on the truck. Mr. Ewing insisted that he did not give anyone permission to remove his truck from the property on Pickle Road.

After leaving PSC Metals, Mr. Ewing and a deputy sheriff went to the property on Pickle Road, where Mr. Ewing discovered that the scrap metal he had accumulated was gone and that some furniture that was being stored in an old house on the property was also missing. Mr. Ewing again insisted that he did not give anyone permission to remove the scrap metal or the furniture from the property. Mr. Ewing had placed "no trespassing" signs on the property, and he estimated that there was between seventy-five and ninety tons of scrap metal on the property, with a value of approximately sixty thousand dollars.

Christopher Lee Carson, an employee of PSC Metals, verified that the appellant sold metal to PSC from December 8, 2003 until his arrest. At times, the appellant brought scrap metal to PSC every day. Mr. Carson even rented a trailer to the appellant but later terminated that agreement after the appellant began to damage the trailer.

On Sunday November 14, 2004, Mr. Carson helped the appellant haul a truck to PSC Metals. The appellant told Mr. Carson that he had permission to take the truck. On the way to PSC Metals with the truck, Mr. Carson and the appellant stopped at a stop sign to get out and check on the truck they were towing. According to Mr. Carson's testimony, Mr. Ewing approached the appellant at that time. The two men had a conversation that Mr. Carson was unable to hear. When the appellant got back into the truck, he told Mr. Carson that Mr. Ewing accused the appellant of stealing the truck. The appellant "chuckled" and then claimed, "no, he just wanted to know the price of metal." Mr. Carson testified that he believed that the appellant had permission to take the truck and that he helped the appellant take the truck to PSC Metals and left it on the scales as it was Sunday and the business was closed. The men planned to split the money from the sale of the truck.

Lusynda Amelang, the weigh master at PSC Metals, testified that the appellant frequented

PSC metals for the three years that she had been working there. In November of 2004, on a weekend, Ms. Amelang received a telephone call from a detective asking her to come to the scrap yard. When Ms. Amelang arrived, the gate was closed and locked, but a large truck was sitting on the scales. The truck was not on the scales on Friday when the business had closed.

On Monday morning, detectives met Ms. Amelang at PSC Metals to see who would claim the money from the truck. The appellant arrived soon after PSC Metals opened for business to receive the money.

Detective Chris Brown was waiting at PSC Metals on the morning of November 15, 2004, to speak with the person who showed up to claim the money for the truck. The appellant arrived to collect the money. The appellant was taken to the Sheriff's office where he informed the officers that he hauled approximately 110 loads of scrap metal from the property on Pickle Road to PSC Metals. The appellant claimed that a neighbor of Mr. Ewing, named Mr. Richardson, said he wanted his land cleared in exchange for the scrap metal. The area of Mr. Richardson's property that contained scrap metal was nowhere close to Mr. Ewing's property.

Ms. Amelang testified that over a period of several years, the appellant sold PSC Metals approximately 132,355 pounds of miscellaneous scrap metal, referred to as "shred," in forty-two individual transactions. On average, the appellant brought PSC loads weighing 3,151.31 pounds and received approximately $102.42 per load. Ms. Amelang testified that the appellant received approximately $4,302.64.

The appellant took the stand in his own defense. He testified that he collected and sold scrap metal as a hobby. The appellant claimed that he met a man named Herman Simms prior to November of 2004 and that as a result of a conversation that he had with Mr. Simms, he hauled approximately 100 to 110 loads of scrap metal from Mr. Ewing's property to PSC Metals in exchange for money. During the four-month period that he removed the scrap metal from Mr. Ewing's property, the appellant claimed that he saw at least three other people doing the same thing.

The appellant claimed that he saw Mr. Ewing for the first time when he approached the appellant and Mr. Carson on the side of the road while they were towing the truck to PSC Metals. The appellant insisted that he thought he had a right to remove the scrap from the property, but admitted that he did not have Mr. Ewing's permission to do so.

Homer Richardson testified for the State in rebuttal. Mr. Richardson testified that he was Mr. Ewing's neighbor and that he gave a black man permission to remove some scrap metal from his property, but that he never gave anyone permission to remove scrap metal from Mr. Ewing's property.

At the conclusion of the jury trial, the jury found the appellant guilty of theft of property valued over one thousand dollars but less than ten thousand dollars. The trial court sentenced the appellant to three years as a Range I standard offender. The appellant filed a motion for new trial,

which the trial court denied. The appellant filed a timely notice of appeal, challenging the sufficiency of the evidence.

## ANALYSIS

The appellant challenges the sufficiency of the evidence. Specifically, the appellant argues that the evidence is insufficient because he believed that he had permission to take the scrap metal from Mr. Ewing's property and that the State's case was primarily circumstantial. The State contends that the evidence was more than sufficient to support the conviction.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The appellant herein was convicted of theft of property valued at over one thousand dollars. "A person commits theft of property if, with the intent to deprive the owner of the property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103.

Looking at the evidence in a light most favorable to the State, the proof at trial showed through direct evidence, namely the testimony of Mr. Ewing, Mr. Carson and Ms. Amelang, that the appellant repeatedly removed scrap metal and a truck from Mr. Ewing's property on Pickle Road and took the items to PSC Metals to exchange for cash. Mr. Ewing testified that he did not give permission to the appellant to remove the truck and scrap metal from the property. The appellant agreed that he did not have Mr. Ewing's permission to remove the property. There was ample proof that the appellant obtained and exercised control over Mr. Ewing's property without Mr. Ewing's

4

consent. Further, there was proof that the appellant intended to deprive Mr. Ewing of the property.

The appellant repeatedly removed scrap metal from Mr. Ewing's property and took it to PSC Metals and exchanged it for cash. Mr. Ewing never received any of the proceeds from the appellant. Further, Mr. Ewing testified that the first time he ever saw the appellant was on Sunday, November 14, 2004. Even though the appellant testified that he actually believed that he had permission to take the scrap metal from the property, the jury heard this testimony and was free to conclude that the appellant was not credible. As stated above, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. Pruett, 788 S.W.2d at 561.

We conclude that there was sufficient evidence to convict the appellant of theft over one thousand dollars. This issue is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.


_____

J. S. DANIEL, SENIOR JUDGE